IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIAH LUCAS JR., | ) No. C 07-1673 CW (PR) |
| Plaintiff, | ) ORDER DENYING DEFENDANTS' |
| | ) MOTION TO DISMISS FOR FAILURE |
| v. | ) TO EXHAUST ADMINISTRATIVE |
| | ) REMEDIES AND ADDRESSING |
| LT. SILVA, et al., | ) PENDING MOTION |
| Defendants. | ) (Docket nos. 32, 49) |

## INTRODUCTION

Plaintiff Isiah Lucas, Jr. is a state prisoner incarcerated at California State Prison - Solano. On November 21, 2008, he filed this pro se civil rights action under 42 U.S.C. § 1983, alleging that prison officials at the Correctional Training Facility (CTF) were deliberately indifferent to his serious medical needs while he was incarcerated there in 2006.

In an Order dated October 28, 2009, the Court summarized the facts relating to the constitutional violations alleged by Plaintiff as follows:

> Plaintiff alleges that Defendants CTF Warden Ben Curry, Sergeant M. Miranda, Lieutenant Silva and Captain Jarvis denied him adequate medical care. Plaintiff claims that they knew that he had a medical chrono to be assigned to a lower bunk due to his chronic back pains, and that they nevertheless ignored his chrono and were responsible for assigning him to an upper bunk from April 20, 2006 through July 8, 2006. Plaintiff claims that during this eighty-day period, he suffered "pain/agony" because of the chronic back pains and knee problems he experienced from being assigned to an upper bunk.

(October 28, 2009 Order at 3-4.) The Court found a cognizable Eighth Amendment claim against Defendants Curry, Miranda, Silva, and Jarvis for deliberate indifference to Plaintiff's serious medical needs. The Court ordered service of the complaint on these

Defendants.  Otherwise, the claims against "all employees" at CTF were dismissed with prejudice.  Plaintiff's claim against Defendant CTF Captain I. Guerra was dismissed with leave to amend.  Because Plaintiff had not been incarcerated at CTF since 2006, his claims for injunctive relief from the conditions of his confinement at CTF were dismissed as moot.

Plaintiff filed an amendment to the complaint on November 25, 2009.

In an Order dated May 6, 2010, the Court reviewed the amendment to the complaint.  The Court found a cognizable Eighth Amendment deliberate indifference claim against Defendant Guerra.  (May 6, 2010 Order at 2.)  In his amendment, Plaintiff clarified that when he named "all employees" at CTF in his original complaint, he was referring to "all who was involved herein Plaintiff's matter, such as 'Tier Officers.'"  (Id. at 2-3.)  However, the Court dismissed his claims against these unidentified defendants.  (Id. at 3.)  Finally, the Court denied Plaintiff's request for reconsideration of the dismissal of his claim for injunctive relief.

Before the Court is Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Plaintiff's complaint for failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).

On August 16, 2010, Plaintiff filed an opposition.[1]

On September 2, 2010, Defendants filed their reply to Plaintiff's opposition.

---

[1] Plaintiff filed a document entitled "Objection Inresponse [sic] to Defendant's 'Motion to Dismiss' Based on Declaration of Patrick J. Mullen," which the Court construes as his opposition.

2

On September 17, 2010, Plaintiff filed a motion for leave to file a response to Defendants' reply.[2] On that same day, Defendants filed an opposition to Plaintiff's motion.

Plaintiff filed his proposed response on September 21, 2010. In his response, Plaintiff asks the Court to refer this action to a Magistrate Judge for court-ordered settlement proceedings. (Resp. at 5-6.) The Court GRANTS Plaintiff's motion for leave to file a response. Therefore, the Clerk of the Court is directed to file Plaintiff's "Response to Defendants' Reply" and docket it as filed on September 21, 2001.

For the reasons discussed below, Defendants' motion to dismiss is DENIED. At this time, the Court DENIES without prejudice Plaintiff's request to refer this action to a Magistrate Judge for court-ordered settlement proceedings. Instead, the parties are directed to abide by the briefing schedule outlined below.

BACKGROUND

On January 18, 2005, while incarcerated at Pleasant Valley State Prison, Plaintiff received a Comprehensive Accommodation Chrono for a lower bunk in response to his complaints of back discomfort and knee problems. (Mot. to Dismiss at 3, Ex. 2.)

On April 19, 2006, Plaintiff was transferred to CTF. (Compl. at 3.) Upon arrival at CTF, he notified medical personnel of his chrono. (Id. at 3, 5 n.1.) On April 20, 2006, a receiving sergeant told Plaintiff that there was a lower bunk shortage, and explained that he would temporarily be assigned to an upper bunk.

---

[2] Plaintiff filed a document entitled "Seeking Enlargement of Time to Submit Objection to Defendant's Previous Motion," which the Court construes as his motion for leave to file a response to Defendants' reply.

3

(Id. at 5, Ex. 1.)  Plaintiff was assigned to "C-Wing Cell 101 Upper" for "approximately forty-seven (47) days, and almost everyday [he] would address staff of the building with [the] matter of [his] medical condition and need for a Lower Bunk/Lower Tier, whereas no resolution was ever manifested."  (Id. at 5 n.1.)

On May 2, 2006, Plaintiff filed a Reasonable Modification or Accommodation Request (CDC 1824) dated April 28, 2006, in which he requested single cell status or administrative segregation for "security purposes" due to his "phobia and paranoia with cell-mates."  (Mot. to Dismiss, Ex. 4.)

Also on May 2, 2006, Plaintiff's grievance was assigned log number 06-01425.  (Mot. to Dismiss, Ex. 5.)  It was stamped "bypass" on the informal level of review because he submitted his grievance on a CDC 1824 rather than on a standard Inmate/Parolee Appeal Form (CDC 602).  (Mot. to Dismiss at 4 (citing Cal. Code Regs. tit. 15, § 3085(a)).)

His grievance was reviewed at the first level on May 26, 2009. (Mot. to Dismiss, Ex. 5; Opp'n, Ex. 3.)  As part of the first level of review, Plaintiff was interviewed by Defendant Miranda. (Id.)  During the interview, Plaintiff verbally notified Defendant Miranda of his chrono for a lower bunk.  (Id.)

On May 27, 2006, Plaintiff sent a follow up letter to the "Sergeant (which viewed my matter)," who the Court assumes to be Defendant Miranda, in which Plaintiff withdrew his request for single cell status because he had found a compatible cell mate.[3] (Opp'n, Ex. 3.)  In that same letter, Plaintiff referred to their

---

[3] Defendants do not acknowledge that Plaintiff sent the May 27, 2006 letter.

4

conversation about his "bottom bunk" issue and also attached his chrono to the letter. (Id.)

The written response to the first formal level of review was forwarded to Plaintiff on June 1, 2006, and he received it on June 6, 2006. Defendant Miranda partially granted Plaintiff's appeal at the first level of review by checking the "P Granted" box. (Mot. to Dismiss, Ex. 5; Opp'n, Ex. 3.) Defendant Miranda wrote, "In regards to your lower bunk request, you will be placed in the C-Wing lower bunk waiting list." (Id.) This decision was signed by Defendant Miranda on May 26, 2006, and by Defendant Jarvis on June 1, 2006. (Id.)

On June 14, 2006, Plaintiff appealed to the second level of review. (Mot. to Dismiss, Ex. 5; Opp'n at 2, Ex. 3.) On June 25, 2006, Plaintiff submitted written correspondence to Defendant Curry, the Office of the Inspector General, the Prison Law Office and the law firm of Rosen, Bien & Asaro. (Compl. at 7.) Plaintiff's appeal was partially granted at the second level of review, and the written response was sent to Plaintiff on July 10, 2006. The "P Granted" box was marked, and it was signed by Defendant Guerra on July 3, 2006 and by Defendant Curry on July 6, 2006. (Mot. to Dismiss, Ex. 5) A letter attached to the second level review decision stated:

> (1) Per memorandum dated 12/15/05, by P. Barker, Chief Deputy Warden, CTF Central, there is a severe shortage of lower bunks available. During this housing crunch, inmates with Lower Bunk Chronos will be housed in upper bunks, except for those inmates with documented seizure disorders. You are on the priority placement list for any lower bunk that becomes available in the Close Custody Wings.
>
> . . . .

5

> Therefore, based on the aforementioned, your appeal is being PARTIALLY GRANTED at the Second Level of Review. Specifically, you are on the priority waiting list for a lower bunk.

(Id.) The letter also acknowledged that Defendant Miranda had previously partially granted Plaintiff's appeal at the first level of review. (Id.)

On July 17, 2006, Plaintiff appealed to the Director's level of review claiming dissatisfaction with the decision at the second level of review, stating:

> Dissatisfied. Made multiple attempts to be assigned a bottom bunk since my arrival @ CTF, which was prescribed for me by Doctor[s] and so for medical reasons, and such was needed incompliance [sic] to CCR Title 15 Art. 8 3350 (a)(1). Despite all efforts (See all "15" Attached pages) -- it took me to be placed in Adseg. to get a bottom bunk and the last response (see pages 1&2) was received while in Adseg (7/11/06). Exhausting Issues, please return or send copies back when done or completed.

(Opp'n, Ex. 3.) The appeal was denied at the Director's level of review on October 17, 2006.[4] (Id.)

On July 8, 2006, Plaintiff placed his property outside his cell and refused to re-enter. (Compl. at 9.) Officer Lavelle, a female CTF correctional officer, intervened, but Plaintiff allegedly pushed her after she ordered him to return to his cell. (Mot. to Dismiss at 5.) Plaintiff states, "I 'never' initiated contact with C/O Lavelle as she states I pushed her to get her out of my way." (Compl. at 9 n.9.) As a result, Plaintiff claims, he was "wrongfully" found guilty of battery on a police officer, and he was transferred to administrative segregation. (Id. at 9.)

---

[4] The denial at the Director's level of review has a box marked labeled, "See Attached Letter;" however, no letter was attached to the copies of the CDC 602 filed by Plaintiff and Defendants.

6

Because Plaintiff was held in administrative segregation from July 8, 2006 through February 28, 2007, Defendants claim that his goals of being placed on single cell status and assigned a lower bunk were both satisfied.  (Mot. to Dismiss at 5.)

## DISCUSSION

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Id. (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Id.; Booth v. Churner, 532 U.S. 731, 741 (2001).  Similarly, exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Woodford v. Ngo, 548 U.S. 81, 83 (2006).  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means

7

in administrative law, where exhaustion means proper exhaustion." Id. at 92.  Therefore, the PLRA exhaustion requirement calls for proper exhaustion.  Id.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 91 (footnote omitted); Jones v. Bock, 549 U.S. 199, 218 (2007) (compliance with prison grievance procedures is required by the PLRA to exhaust properly).  It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  Id.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation (CDCR). Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to

8

dismiss under Federal Rule of Civil Procedure 12(b). <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).

Defendants did so here. Defendants argue that Plaintiff's failure to refer to the lower bunk issue in his CDC 1824 means that he did not properly exhaust. (Mot. to Dismiss at 7.) Defendants claim that Plaintiff's CDC 1824 "addressed solely his desire to be placed on single-cell status due to what he characterized as 'phobia and paranoia with cell-mates.'" (<u>Id.</u>) Defendants contend that "allowing inmates to circumvent established administrative procedures in the manner that Plaintiff did would clash irreconcilably with the PLRA's aim of giving prison authorities 'a <u>fair and full</u> opportunity to adjudicate [inmates'] claims.'" (Reply at 4 (<u>citing</u> <u>Woodford</u>, 548 U.S. at 90) (emphasis in original).)

Although Plaintiff did not include a request to be assigned to a lower bunk on his CDC 1824, he notified Defendant Miranda of his request during the first level of review. Because prison officials were notified of Plaintiff's lower bunk request during the first level of review, they were provided an opportunity to address his request. In fact, the record shows that Defendant Miranda partially granted his appeal at the first level and placed him on a priority low bunk waiting list. Defendants also argue that, had Plaintiff referred to his lower bunk request in his initial CDC 1824, prison officials may have been able to resolve this issue. (Mot. to Dismiss at 7 n.1; Reply at 4.) However, the Court finds Defendants' argument unavailing. Even if Plaintiff had included his lower bunk request in his CDC 1824, the relief provided would have been the same, i.e., Plaintiff would have been placed on a

9

1 lower bunk waiting list.  Plaintiff then appealed to the second
2 level of review after determining that the relief granted at the
3 first level relating to his lower bunk request was inadequate.
4 Prison officials replied to Plaintiff's appeal at the second level
5 as if it was proper, and again partially granted his appeal.
6 Finally, Plaintiff, who still found the relief granted inadequate,
7 appealed the issue relating to his lower bunk request to the
8 Director's level of review, and it was denied.  At no point did
9 prison officials indicate to Plaintiff that his lower bunk request
10 could not be addressed because he failed to refer to it in his
11 initial CDC 1824.

12     The Ninth Circuit held in Griffin v. Arpaio that "'a grievance
13 suffices if it alerts the prison to the nature of the wrong for
14 which redress is sought.'"  557 F.3d 1117 (9th Cir. 2009) (quoting
15 Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  "The primary
16 purpose of a grievance is to alert the prison to a problem and
17 facilitate its resolution, not to lay groundwork for litigation."
18 Id. at 1120.  The Ninth Circuit found that Griffin had not properly
19 exhausted because "[t]he officials responding to his grievance
20 reasonably concluded that the nurse's order for a lower bunk
21 assignment solved Griffin's problem."  Id. at 1121.  Griffin
22 continued to appeal because the nurse's lower bunk order was being
23 disregarded.  Id.  However, instead of explaining that the nurse's
24 order had been disregarded as the reason for his appeal, "Griffin
25 repeatedly demanded a ladder."  Id.  As such, the court found that
26 he did not provide adequate information to prison officials to
27 address his issue.  Id.

28     Unlike Griffin, Plaintiff in the present case provided

adequate information to Defendants to address his lower bunk request.  The record shows that, throughout the prison's grievance process, he alerted Defendants that his chrono was being disregarded, and that the relief he sought was a lower bunk assignment.  Therefore, Defendants have failed to meet their burden of proving that Plaintiff did not exhaust all available administrative remedies.  Accordingly, Defendants' motion to dismiss is DENIED.

## CONCLUSION

For the foregoing reasons,

1.   The Court GRANTS Plaintiff's motion entitled, "Seeking Enlargement of Time to Submit Objection to Defendant's Previous Motion" (docket no. 49), which has been construed as a motion for leave to file a response to the Defendants' reply.  Therefore, the Clerk is directed to file Plaintiff's "Response to Defendants' Reply" (docket no. 51) and docket it as filed on September 21, 2001.

2.   The Court DENIES Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust available administrative remedies (docket no. 32).

3.   The Court DENIES without prejudice Plaintiff's request to refer this action to a Magistrate Judge for court-ordered settlement proceedings.  Instead, the parties shall abide by the following briefing schedule:

   a.   No later than <u>thirty (30) days</u> from the date of this Order, Defendants shall file a motion for summary judgment.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure

11

56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

    b. Plaintiff's opposition to the motion for summary judgment shall be filed with the Court and served on Defendants no later than <u>thirty (30) days</u> after the date on which the aforementioned Defendants' motion is filed.

    c. If Defendants wish to file a reply brief, they shall do so no later than <u>fifteen (15) days</u> after the date Plaintiff's opposition is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

4. This Order terminates Docket nos. 32 and 49.

IT IS SO ORDERED.

DATED: 10/6/2010

CLAUDIA WILKEN
United States District Judge