**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ISIAH LUCAS, JR.,

      Plaintiff,

  v.

LT. SILVA, et al.,

      Defendants.

_____/

No. C 07-1673 CW (PR)

ORDER DENYING PLAINTIFF'S MOTION
TO STRIKE MEDICAL RECORDS; AND
GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

(Docket nos. 63, 67)

INTRODUCTION

On March 23, 2007, Plaintiff Isiah Lucas, Jr., a state
prisoner currently incarcerated at the Richard J. Donovan
Correctional Facility, filed this pro se civil rights action
pursuant to 42 U.S.C. § 1983, alleging constitutional violations
stemming from his incarceration at the Correctional Training
Facility (CTF).  On October 29, 2009, the Court found cognizable
Plaintiff's Eighth Amendment claim against Defendants CTF Warden B.
Curry, CTF Captain T. Jarvis, CTF Associate Warden D. Silva and CTF
Sergeant M. Miranda for deliberate indifference to his serious
medical needs.  The Court dismissed Plaintiff's claim against
Defendant CTF Captain I. Guerra with leave to amend.

On November 25, 2009, Plaintiff submitted his amended
complaint.  On May 6, 2010, the Court found cognizable Plaintiff's
claim of deliberate indifference to his serious medical needs
against Defendant Guerra.

On June 7, 2010, Defendants Curry, Jarvis, Silva and Miranda
filed a motion to dismiss for Plaintiff's failure to exhaust.  On
October 6, 2010, the Court denied the motion to dismiss.

**United States District Court**
For the Northern District of California

On October 21, 2010, Plaintiff moved to amend his complaint to add claims against additional Defendants.  On November 12, 2010, the Court granted Plaintiff's motion to add deliberate indifference claims against Defendants CTF Sergeant M. Knedler and CTF Correctional Officers N. McGriff, J. Childers and G. Lopez.

Before the Court is the motion for summary judgment filed by Defendants Curry, Jarvis, Guerra, Silva, Miranda, Knedler, McGriff, Lopez and Childers.  In support of their motion, Defendants rely on Plaintiff's medical records.  Plaintiff has filed an opposition, attaching unauthenticated medical records as exhibits in support of his opposition.  Defendants have filed their reply, along with objections to the exhibits attached to Plaintiff's opposition.

Also before the Court is Plaintiff's motion to strike the medical records relied upon by Defendants.

Having considered the papers filed by the parties, the Court DENIES Plaintiff's motion to strike and GRANTS Defendants' motion for summary judgment.

BACKGROUND

Plaintiff has "hyper-extensive (i.e., double jointed) knees" and "a history of complaints about lower back and neck pain," which he attributes to arthritis.  (Orr Decl. ¶ 3.)  On January 18, 2005, while incarcerated at Pleasant Valley State Prison, Plaintiff received a Comprehensive Accommodation Chrono (chrono) for a "lower bunk/lower tier" in response to his complaints of knee problems and back discomfort.  (Grigg Decl., Ex. B.)

On April 19, 2006, Plaintiff was transferred to CTF, where he was housed as a "close custody" inmate.  (Pl.'s Dep. 75:20-78:8, Dec. 16, 2010.)  This custody level requires "more stringent

2

**United States District Court**
For the Northern District of California

security due to an inmate's crimes and sentences or, more frequently, due to their behavior while in prison." (Miranda Decl. ¶ 4.) For security purposes, prison officials could only house Plaintiff in a facility dedicated to prisoners with that custody level. (Pl.'s Dep. 74:5-15.)

Plaintiff notified CTF medical personnel of his chrono upon arrival. However, at that time there was "a significant shortage of available lower bunk housing" in CTF "closed custody wings." (Silva Decl. ¶ 4-6.) Only inmates with "documented seizure disorders" were given lower bunks. (Id.) Plaintiff was informed he would be "temporar[ily]" assigned to an upper bunk "until a bottom bunk was found." (Compl. at 5.) Plaintiff alleges that "almost everyday" he addressed CTF staff regarding his "medical condition and need for a lower bunk/lower tier." (Id. at 5 n.1.) In his motion to add claims against additional Defendants, Plaintiff identifies the particular members of CTF staff he approached as Defendants Knedler and McGriff. (Mot. to Add Defs. at 2.) Plaintiff alleges "no resolution was ever manifested." (Compl. at 5 n.1.)

On May 2, 2006, Plaintiff filed a CDC 1824 Reasonable Modification or Accommodation Request, identified as appeal log no. 06-01425, in which he requested single cell status or administrative segregation due to his "phobia and paranoia with cell-mates." (Grigg Decl., Ex. D.) On May 26, 2006, appeal log no. 06-01425 was "partially granted" at the first level of review in that Defendant Miranda interviewed Plaintiff, instructed him to "fill out and submit a request for a cell change form" and also informed him he would "be placed on the C-Wing lower bunk waiting

**United States District Court**
For the Northern District of California

list."  (Id.)  The partial grant was approved by Defendant Jarvis.

On June 5, 2006, Plaintiff was moved to an upper bunk on the "3rd tier" in "D-Wing," and told by Defendant Knedler that he would be "the only black inmate on the waiting list . . . for a bottom bunk." (Compl. at 6.)

On June 7, 2006, Plaintiff told Defendants Childers and Lopez he "was suffering from being assigned to the top bunk, and . . . he couldn't take the pain/agony much longer." (Id. at 6.)  Although Defendants Childers and Lopez told Plaintiff they would "see what they could do," they did not ever assign him to a lower bunk.  (Id. at 6-7.)

On June 14, 2006, Plaintiff submitted appeal log no. 06-01425 to the second level of review.

On June 25, 2006, Plaintiff submitted written correspondence to Defendant Curry, the Office of the Inspector General, the Prison Law Office and the Rosen, Bien & Asaro law firm.  Plaintiff requested that they "intervene in a manner to bring a resolution" to his bunking assignment, because sixty-eight days had passed without prison staff "comply[ing] with medical orders . . . ." (Id. at 7.)  Defendant Guerra responded to Plaintiff's letter on Defendant Curry's behalf.  (Pl.'s Dep. 113:24-114:6.)

On June 26, 2006, Defendant Silva interviewed Plaintiff in connection with the second level of review for appeal log no. 06-01425.  (Silva Decl. ¶ 8.)  Defendant Silva "said he would see what he could do about the matter." (Compl. at 8.)

On June 27, 2006,[1] Defendant Silva again interviewed Plaintiff

---

[1] Plaintiff has written the date of his second interview with Defendant Silva as "6/27/07." (Compl. at 8.)  The Court assumes Plaintiff mistakenly wrote "07" instead of "06" for the year.

regarding the "bottom bunk matter." (<u>Id.</u>) Defendant Silva "said they were working on the matter and said to give them a little longer." (<u>Id.</u>) On July 2, 2006, when Plaintiff saw Defendant Silva in the corridor, he "not only expressed the continuous need for a bottom bunk," but also "a need to get out of cell 307 altogether." (<u>Id.</u>) Defendant Silva "threw his hands up and said that there was nothing he could do at that time." (<u>Id.</u>)

On July 8, 2006, Plaintiff was "no longer able/willing to deal with the pain and suffering from being assigned to a top bunk . . . ." (<u>Id.</u>) He placed his property outside his cell and refused to re-enter. CTF Correctional Officer LaVelle intervened, and Plaintiff was transferred to administrative segregation for "Battery on a Peace Officer."[2] (<u>Id.</u> at 9.)

On July 10, 2006, appeal log no. 06-01425 was partially granted at the second level of review, in that Plaintiff was informed there was "a severe shortage of lower bunks available," and that "[d]uring this housing crunch, inmates with Lower Bunk Chronos will be housed in upper bunks, except for those inmates with documented seizure disorders." (<u>Id.</u>) The response also informed Plaintiff that he was "on the priority place for any lower bunk that becomes available in the Close Custody Wings." (<u>Id.</u>) The partial grant was approved by Defendants Curry and Guerra.

In sum, Plaintiff claims he was not assigned to a lower bunk for a total of eighty-one days, until his transfer to administrative segregation. Plaintiff was housed in administrative segregation from July 8, 2006 to February 28, 2007. The Court

_____

[2] Plaintiff claims he was "wrongfully" found guilty of Battery on a Peace Officer. (Compl. at 9.)

United States District Court
For the Northern District of California

assumes Plaintiff was transferred out of CTF soon after being
released from administrative segregation because on March 18, 2007,
when Plaintiff signed his complaint, he states that he was being
housed at California State Prison - Corcoran.

DISCUSSION

I.   Legal Standard

Summary judgment is properly granted when no genuine and
disputed issues of material fact remain, and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).

The moving party bears the burden of showing that there is no
material factual dispute; therefore, the Court must regard as true
the opposing party's evidence, if it is supported by affidavits or
other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,
815 F.2d at 1289.  The Court must draw all reasonable inferences in
favor of the party against whom summary judgment is sought.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment
are those which, under applicable substantive law, may affect the
outcome of the case.  The substantive law will identify which facts
are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

Where the moving party does not bear the burden of proof on an

United States District Court
For the Northern District of California

issue at trial, the moving party may discharge its burden of

production by either of two methods:

> The moving party may produce evidence negating an
> essential element of the nonmoving party's case, or,
> after suitable discovery, the moving party may show
> that the nonmoving party does not have enough
> evidence of an essential element of its claim or
> defense to carry its ultimate burden of persuasion at
> trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d

1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an

absence of evidence to support an essential element of a claim or

defense, it is not required to produce evidence showing the absence

of a material fact on such issues, or to support its motion with

evidence negating the non-moving party's claim.  Nissan, 210 F.3d

at 1106; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885

(1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.

1991).  If the moving party shows an absence of evidence to support

the non-moving party's case, the burden then shifts to the non-

moving party to produce "specific evidence, through affidavits or

admissible discovery material, to show that the dispute exists."

Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an

essential element of the non-moving party's claim or defense, it

must produce affirmative evidence of such negation.  Nissan, 210

F.3d at 1105.  If the moving party produces such evidence, the

burden then shifts to the non-moving party to produce specific

evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of

production by either method, the non-moving party is under no

United States District Court
For the Northern District of California

obligation to offer any evidence in support of its opposition.  <u>Id.</u>
This is true even though the non-moving party bears the ultimate
burden of persuasion at trial.  <u>Id.</u> at 1107.

II.  Evidence Considered

     A district court may only consider admissible evidence in
ruling on a motion for summary judgment.  <u>See</u> Fed. R. Civ. P.
56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).

     In support of Defendants' motion for summary judgment,
affidavits have been filed by Dr. Orr, Attorney M. Grigg and
Defendants Silva, Miranda, Childers, McGriff, Lopez and Knedler.

     Plaintiff verified his complaint filed on March 23, 2007 by
signing it under penalty of perjury.  Also in the record are
Plaintiff's amended complaint, his motion to add Defendants, and
his opposition, none of which is signed under penalty of perjury.
Therefore, for the purposes of this Order, the Court will treat
Plaintiff's original complaint filed on March 23, 2007 as an
affidavit in opposition to Defendants' motion for summary judgment
under Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u>
<u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

     In his motion to strike, Plaintiff moves to (1) rule
inadmissible any of his "medical records that Defendant [sic] has
obtained"; (2) compel Defendants to "return the medical
records/documents . . . obtained from CSP-Solano;" (3) compel
Defendants to "disclose the party that ordered the release of
Plaintiff's medical records;" and (4) compel Defendants to "abide
by law in the future in obtaining medical records/files." (Mot. to
Strike at 3.)  Plaintiff argues his medical records are
inadmissible because he has "a constitutional right to privacy in

that of his medical records/diagnoses/information." (Id. at 1.)
Defendants did not respond to Plaintiff's motion to strike.

The Court finds unavailing Plaintiff's arguments for striking
the medical records. He claims that the medical records Defendants
rely on in support of their motion are inadmissible based on his
"right to privacy." (Id.) Plaintiff fails to argue that
Defendants relied on these particular medical records for reasons
other than in response to the lawsuit. Nor does Plaintiff argue
that any of the medical records Defendants rely on are irrelevant
to his deliberate indifference claim. The record shows that
(1) Defendants have relied on Plaintiff's lower bunk chrono and his
related medical records in support of their motion for summary
judgment; and (2) Plaintiff has submitted similarly relevant
medical records in support of his opposition. Therefore,
Plaintiff's motion to strike his medical records is DENIED, because
there is no evidence that Defendants relied on any irrelevant
medical records in support of their motion for summary judgment.[3]

III. Deliberate Indifference Claim

Deliberate indifference to serious medical needs violates the
Eighth Amendment's proscription against cruel and unusual
punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The
analysis of a claim of deliberate indifference to serious medical
needs involves an examination of two elements: (1) a prisoner's

---

[3] Plaintiff has mooted his motion to strike by submitting his
own copies of similar medical records in support of his opposition.
As mentioned above, Defendants object to the exhibits attached to
Plaintiff's opposition -- including his medical records -- as
unauthenticated. However, because the Court relies in its analysis
below on Plaintiff's verified complaint and not on the exhibits
attached to his opposition, it need not address Defendants'
objection.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

serious medical needs and (2) a deliberately indifferent response by the defendants to those needs. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." <u>McGuckin,</u> 974 F.2d at 1059 (citing <u>Estelle</u>, 429 U.S. at 104). Examples of indications that a prisoner has a serious need for medical treatment are the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>Id.</u> at 1059-60 (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

The plaintiff must also show that the defendant knew the plaintiff faced "substantial risk of serious harm" yet failed to take reasonable steps to abate it. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A prison official "who act[s] reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Id.</u> at 845. Further, a prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." <u>Id.</u>

Therefore, in order to establish deliberate indifference, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. <u>McGuckin</u>, 974 F.2d at 1060; <u>Shapley</u>

10

<u>v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).  A defendant's actions need not be "egregious" nor need they result in "significant injury" in order to establish a violation of the prisoner's federal constitutional rights, <u>McGuckin</u>, 974 F.2d at 1059; however, the existence of serious harm tends to support an inmate's deliberate indifference claim.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).

In order to establish deliberate indifference, Plaintiff must show he had serious medical needs.  Plaintiff alleges that while he was assigned to an "upper tier/upper bunk," his back and knee pain amounted to serious medical needs.  Defendants allege, in contrast, that Plaintiff did not have any serious medical needs because he was not exposed "to a societally intolerable risk of harm."  (Mot. for Summ. J. at 8.)  If Plaintiff's assignment "actually had caused, or posed a genuine risk of, such harm," Defendants contend, "Plaintiff could simply have put his mattress on the floor and slept there."  (<u>Id.</u>)  Defendants also argue Plaintiff "tacitly confirmed the absence of a 'societally intolerable risk' by admitting he never even asked his cellmate to switch bunks."  (<u>Id.</u>)  Finally, Defendants argue that Plaintiff "confirmed his claim's untenability through his inability to articulate what ostensibly significant problem his upper bunk assignment supposedly caused or could have caused."  (<u>Id.</u> (citing Pl.'s Dep., 29:7-9; 30:22-24; 41:20-21).)  Rather, Plaintiff "repeatedly alluded to mere 'stiffness.'"  (<u>Id.</u>)

The Court must construe the evidence and the inferences to be drawn therefrom in a light most favorable to the non-moving party.

**United States District Court**
For the Northern District of California

T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  Plaintiff's allegations could support an inference and conclusion that the failure to assign him to a "lower bunk/lower tier" pursuant to his lower bunk chrono resulted in the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d at 1059.  Therefore, the Court assumes without deciding that Plaintiff had serious medical needs.

In order to establish deliberate indifference, Plaintiff also must show that Defendants acted with deliberate indifference to his serious medical needs.  Therefore, the Court will consider his claims against each specific group of Defendants as follows: the prison officials and the appeal reviewers.

    A.   Prison Officials: Defendants Knedler, McGriff, Childers, Lopez, Miranda and Silva

Plaintiff alleges Defendants Knedler, McGriff, Childers, Lopez, Miranda and Silva were deliberately indifferent to his serious medical needs because, although he informed these prison officials of his need for a "lower bunk/lower tier" due to his back and neck pain, they did not assign him to a lower bunk.  (Compl. at 5 n.1, 6, 8.)

Defendants Knedler, McGriff, Childers and Lopez allege that, although they do not specifically remember Plaintiff, they never consciously disregarded any substantial risk or serious harm that Plaintiff may have faced.  (Knedler Decl. ¶ 6; McGriff Decl. ¶ 2; Childers Decl. ¶ 2; Lopez Decl. ¶ 2.)  They further allege that if an inmate complained that his "lower bunk/lower tier" chrono was not being recognized, it would generally not signal the inmate

United States District Court
For the Northern District of California

faced a serious risk of harm, because such chronos were commonly
issued to enhance inmate comfort.  (Knedler Decl. ¶ 8; McGriff
Decl. ¶ 8; Childers Decl. ¶ 8; Lopez Decl. ¶ 5.)  Defendants
Knedler, McGriff, Lopez and Childers also claim they "could not
have circumvented" the order that "lower bunks were only to be
provided to inmates with documented seizure disorders until other
lower bunks opened up."  (Miranda Decl. ¶ 13.)  If a particular
inmate, who -- like Plaintiff -- did not have a documented seizure
disorder, complained about the upper bunk assignment, Defendants
Knedler, McGriff, Childers and Lopez had no other recourse but to
explain that there existed a lower bunk shortage and to provide
that inmate with the proper appeal or request forms.[4]  (Knedler
Decl. ¶ 7; McGriff Decl. ¶ 6-7; Childers Decl. ¶ 4-6; Lopez Decl.
¶ 4.)  Also, they claim that "it would have been impossible for the
officers to fulfill [Plaintiff's] demands" to move to a lower
bunk/lower tier "because correctional officers do not have the
authority to arrange for cell transfers."  (Id.)  If an inmate
complained that the upper bunk assignment caused him significant
problems, then Defendants Knedler, McGriff, Childers and Lopez
claim they would have alerted their supervisors or medical staff.
(Knedler Decl. ¶ 6; McGriff Decl. ¶ 5; Childers Decl. ¶ 4; Lopez
Decl. ¶ 5.)

     Defendants Miranda and Silva likewise allege they did not
believe that keeping Plaintiff temporarily assigned to an upper

---

     [4] Defendant Lopez also explains that, as "security door
officer," he had "very limited contact with inmates," which "makes
it very unlikely that [he] would have had any sort of extended
conversation with Inmate Lucas."  (Id. ¶ 6.)

bunk would cause him anything more than discomfort.  (Silva Decl. ¶ 9; Miranda Decl. ¶ 11.)  Defendant Miranda alleges he had no authority to grant Plaintiff's appeal because of the lower bunk shortage, stating "placing Inmate Lucas on the waiting list was all that [he] was authorized to do."  (Miranda Decl. ¶ 8.)  Defendant Miranda claims he "had no ability to provide Inmate Lucas with a lower bunk while those with more severe medical issues required them."  (Id. ¶ 11.)  Defendant Silva alleges he "placed Mr. Lucas on the priority wait list," then "sent the appeal response to Captain Guerra and Warden Curry for approval."  (Silva Decl. ¶ 9.) Defendant Silva further claims, "I lacked the ability and authority to move another inmate or make the type of medical determination that such an act would require."  (Id. ¶ 12.)

Defendants Knedler, McGriff, Childers, Lopez, Miranda and Silva do not refute Plaintiff's allegation that, although he complained of back and neck pain resulting from his upper bunk assignment, they did not ever assign him to a lower bunk. Defendants also do not allege they in fact alerted their supervisors or medical staff that Plaintiff faced a serious risk of harm.  Taking the facts in the light most favorable to Plaintiff, he has shown these Defendants acted with a sufficiently culpable state of mind by ignoring or failing to respond to his pain or serious medical needs.  See McGuckin, 974 F.2d at 1060.  Therefore, the Court finds that the evidence produced by Plaintiff raises a material factual dispute about whether these Defendants acted with deliberate indifference toward his serious medical needs when they failed to remedy his complaints of back and neck pain from the

14

United States District Court
For the Northern District of California

upper bunk assignment.  Accordingly, Defendants Knedler, McGriff, Lopez, Childers, Miranda and Silva are not entitled to summary judgment as to the deliberate indifference claim.

      B.   Appeal Reviewers: Defendants Jarvis, Guerra and Curry

      Plaintiff alleges Defendants Jarvis, Guerra and Curry were deliberately indifferent to his serious medical needs because they approved the partial grant for appeal log no. 06-01425 at either the first or second level of review.  Plaintiff also sues Defendant Curry in his supervisory capacity.  Specifically, Plaintiff alleges Defendant Curry did not "intervene" to resolve Plaintiff's "lower bunk/lower tier" situation, despite the fact that Plaintiff sent him a letter.  (Compl. at 7.)

      Plaintiff claims that Defendants Jarvis and Guerra, as the appeal reviewers, and Defendant Curry, as a supervisor, were aware of Plaintiff's "lower bunk/lower tier" situation through reading his appeal and his letter, respectively.  These Defendants do not refute Plaintiff's allegation that, although he alerted them of his back and neck pain resulting from his upper bunk assignment, they did not ever assign him to a lower bunk.  Taking the facts in the light most favorable to Plaintiff, he has shown these Defendants acted with a sufficiently culpable state of mind by failing to intervene to resolve Plaintiff's "lower bunk/lower tier" situation, despite the fact that Plaintiff alerted them of his pain or serious medical needs.  See McGuckin, 974 F.2d at 1060.  Therefore, the Court finds that the evidence produced by Plaintiff raises a material factual dispute about whether these Defendants acted with deliberate indifference toward his serious medical needs when they failed to remedy his complaints of back and neck pain from the

United States District Court
For the Northern District of California

upper bunk assignment.  Accordingly, Defendants Jarvis, Guerra and Curry are not entitled to summary judgment as to the deliberate indifference claim.

IV.  Qualified Immunity

In the alternative, Defendants Knedler, McGriff, Lopez, Childers, Miranda, Silva, Jarvis, Guerra and Curry argue that summary judgment is warranted because, as government officials, they are entitled to qualified immunity from Plaintiff's deliberate indifference claim.  They contend that "it would not have been 'clear' to other reasonable people in the defendant's [sic] positions that their conduct was unconstitutional."  (Mot. for Summ. J. at 12.)

The defense of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (citing Saucier v. Katz, 533 U.S. 194 (2001)).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  Id.

16

United States District Court
For the Northern District of California

Regarding the first prong, the threshold question must be: taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  <u>Saucier</u>, 533 U.S. at 201.  Regarding the second prong, the inquiry as to whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition.  <u>Id.</u> at 202.  The relevant, dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>  If the law "did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  <u>Id</u>.  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  <u>Id.</u> (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

A memorandum issued by CTF Chief Deputy Warden P. Barker on December 15, 2005 and addressed to all CTF staff stated, "Central Facility is currently experiencing a severe shortage of housing for inmates with Lower Bunk Chronos."  (Grigg Decl., Ex. C.)  "During this temporary housing crunch, inmates with Lower Bunk Chronos will be housed in race-appropriate upper bunks, except for those inmates with <u>documented</u> seizure disorders."  (<u>Id.</u> (emphasis in original)) The three wings dedicated to close custody inmates were C, D and E wings. (Silva Decl. ¶ 4.)  "Sending inmates whose chronos could not be immediately accommodated to non-close custody wings was not an option of the security level that close custody inmates required."  (<u>Id.</u> ¶ 5.)  As mentioned above, Plaintiff was a level two, close

United States District Court
For the Northern District of California

1   custody inmate.  (Id. ¶ 6.)

2       Defendants Knedler, McGriff, Lopez, Childers, Miranda, Silva,

3   Jarvis and Guerra, who were all CTF staff members, were required to

4   abide by Chief Deputy Warden Barker's memorandum.  Specifically,

5   these Defendants did not have the authority to provide Plaintiff

6   with a lower bunk because of the lower bunk shortage and strict

7   limitations set out in this memorandum.  (Miranda Decl. ¶ 8, 13;

8   Silva Decl. ¶ 12.)  Furthermore, these Defendants had legitimate

9   penological reasons for not assigning Plaintiff to a lower bunk in

10  non-close custody wings due to the "security level that close

11  custody inmates required."  (Silva Decl. ¶ 5.)  It would not have

12  been clear to a reasonable officer that following housing protocols

13  outlined in Chief Deputy Warden Barker's memorandum would have

14  violated Plaintiff's Eighth Amendment rights.  Because a reasonable

15  officer in the positions of Defendants Knedler, McGriff, Lopez,

16  Childers, Miranda, Silva, Jarvis and Guerra could have thought his

17  conduct was lawful, they are entitled to qualified immunity on the

18  deliberate indifference claim.  Saucier, 533 U.S. at 202.

19  Therefore, their motion for summary judgment is GRANTED.

20      Defendant Curry was an administrator and, as CTF Warden, he

21  did not have any direct involvement in Plaintiff's bunking

22  assignment.  As mentioned above, Plaintiff claims Defendant Curry

23  received a letter from Plaintiff requesting he "intervene" to

24  resolve Plaintiff's "lower bunk/lower tier" situation.  However, as

25  Defendants argue, there is no evidence that Defendant Curry was

26  aware of any constitutional violations and failed to act to prevent

27  them, because Plaintiff has "no idea" whether Defendant Curry

28  received his letter.  (Mot. for Summ. J. at 11 (quoting Pl.'s Dep.

United States District Court
For the Northern District of California

113:24-114:6).)  While Plaintiff claims he sent a letter to
Defendant Curry about "the matter at hand," (compl. at 7), he does
not include a copy of this letter.  Thus, the Court cannot assess
whether Defendant Curry was informed that Plaintiff experienced
neck and back pain due to his upper bunk assignment.  Furthermore,
it was Defendant Guerra who responded to Plaintiff's letter by
attaching the memorandum regarding the lower bunk shortage.

Nevertheless, the Court has assumed above that Defendant Curry
was aware of Plaintiff's back and neck pain resulting from his
upper bunk assignment, and it has found a constitutional violation
because Defendant Curry did not intervene when his subordinates
failed to assign Plaintiff to a lower bunk.  However, it would not
have been clear to a reasonable person in Defendant Curry's
position that failing to intervene when his subordinates ignored
Plaintiff's pain by following the housing protocols outlined in
Chief Deputy Warden Barker's memorandum would violate Plaintiff's
Eighth Amendment rights, especially in light of the fact that
inmates with documented seizure disorders had priority over the
other inmates with lower bunk chronos.  Accordingly, Defendant
Curry is also entitled to qualified immunity on the deliberate
indifference claim; therefore, his motion for summary judgment is
GRANTED.

CONCLUSION

For the foregoing reasons,

1.   Plaintiff's motion to strike the medical records relied
upon by Defendants (docket no. 63) is DENIED.

2.   Defendants' motion for summary judgment (docket no. 67)

is GRANTED.

    3.   The Clerk of the Court shall enter judgment in favor of Defendants in accordance with this Order, terminate all pending motions, and close the case.  Each party shall bear his own costs.

    4.   This Order terminates Docket nos. 63 and 67.

    IT IS SO ORDERED.

Dated: 3/30/2011



CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ISIAH LUCAS JR.,

Case Number: CV07-01673 CW

       Plaintiff,

**CERTIFICATE OF SERVICE**

  v.

M. MIRANDA et al,

       Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
Court, Northern District of California.

That on March 30, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
located in the Clerk's office.

Isiah  Lucas E-91878

R.J. Donovan Correctional Facility

P.O. Box 799001

1-2-104

480 Alta Road

San Diego,  CA 92179-9001

Dated: March 30, 2011

                      Richard W. Wieking, Clerk

                      By: Nikki Riley, Deputy Clerk

**United States District Court**
For the Northern District of California